This was an action brought by the Bank of W. and B. as the holder of a note dated 18th Jan. 1819, for $2,000: against W. B. Cooper, admr. of Thos. Cooper, who was the indorser of said note. The note was as follows:
 "18 January, 1819. For $3,090.
Sixty days after date I promise to pay to Thomas Cooper, Esq., or order, two thousand dollars, without defalcation, for value received; negotiable and payable at the Bank of Wilmington and Brandywine.
 O. HORSEY.
 Credit the drawer, Thomas Cooper.
 To be done for eighteen hundred dollars. O. H."
The note was indorsed "Thomas Cooper." Noted Mar. 21. Pro't. Mar. 23. Cr. Dec. 13, 1828, $1,020 44 in full of in't.
The declaration alledged the making and indorsement of a note of $2,000, and averred "that afterwards when the said note became due and payable according to the tenor and effect thereof, to wit: on the 22nd of March, in the rear afs'd. at Wilmington, in the county of Newcastle and state afsd. to wit: at Sussex county afsd. the said note so indorsed as afsd. was duly presented for payment to the said O. Horsey
and the said O. Horsey then and there had notice of the said indorsement made thereon as afsd. was then and there requested to pay the said sum of money in the said note specified according to thetenor and effect of the said note and of the said indorsement so made thereon as afsd. but that the said O. Horsey did not nor would, at the said time when the said note was so presented to him for payment thereof as afsd., or at any time afterwards, pay the said sum of money therein specified, or any part thereof, but wholly neglected,c. of all of which said several premises, the said Thomas Cooper afterwards, c. had notice." The second count declared on a note made by O. Horsey, and indorsed by Thos. Cooper to plffs. for $1,800, and then averred a presentment to O. Horsey and non-payment as in the first count.
The execution of the note and the indorsement were admitted; also, the probate by the cashier. The Notary Public being dead, his handwriting was admitted and the protest read, subject to all legal objections. The protest was dated 20th March 1829, and stated a presentment at the house of the drawer, 0. Horsey, who was not at home "and the said 0. Horsey not appearing at the said bank, nor any person or persons on his behalf, to pay off the sum duo on the said note, and the indorser being duly notified of the non-payment thereof" the protest was thereupon' made. The notary's book was also produced, in which was the following memorandum: —
 "B. W. B., March 20, 1819." (Copy of the note and indorsement.) "Noted, protest sent to bank."
Thomas M'Dowell, Esq. sworn. Proves the handwriting of Edward Roche, the Notary Public, by whom this protest and memorandum *Page 12 
were made. He is now dead. This is his notarial book, and the official registry of the demand and protest of this note. The book came to me with the records and dockets of Mr. Roche, who was a magistrate, and whom I succeeded in office. I am also a Notary Public. The mails have usually left Wilmington for Georgetown on Mondays, Wednesdays and Fridays. Mr. Roche was in the habit of notifying the indorser on the last day of grace. If the drawer or indorser lived in town, he called; if out of town, he mailed a letter on the last day of grace. Thomas Cooper lived in Georgetown. The note became due on the 19th March 1819, payable on the 22d. The date at the top of the register, is the time the notary received the note from the bank.
Bayard for deft., moved a nonsuit.
1st. We could have demurred to this declaration and had judgment, because there is no allegation of presentment and demand on the last day of grace, at the place where the note is made payable. If this was matter the plff. was bound to alledge in his narr, he cannot prove it without such allegation; it is like, indeed it is, a condition precedent. But the proof is, that the note was delivered to Roche the notary, on the 20th; it was therefore not at the place of payment when it became due.
2nd. The note has been altered so as to discharge the indorser. It was drawn for $2,000, and under the signature of the drawer is written "to be done for $1,800." Now unless this can be shown to have been done with the assent of the indorser he is discharged; a contrary doctrine would enable the holder and drawer materially to change the contract of the indorser. The alteration is the same as if the $2,000 had been stricken out, and $1,800 inserted, which would undoubtedly discharge the indorser. The indorser can only be held according to his contract, and you cannot in any manner, vary that contract without his consent, without discharging him. Diminishing a note may equally injure an indorser as increasing it. Suppose an agreement between the drawer and indorser for a division of the money raised on the note, the very inducement to the indorser's signing it might be defeated by lessening the sum. The general principle is always the same and invariable. This note is declared on as a note of $2,000. The words "to be done for $1,800" makes it a note for $1,800, which is a variance. The count charging it to be an indorsement of a note of $1,800, must make it an indorsement of an altered note, and then the assent of the indorser to the alteration must be proved.
3rd. The presentment and demand must be made at the place on the last day of grace. The protest of the notary is no evidence in cases of inland bills and promissory notes. It is only evidence of the demand and refusal in case of foreign bills; 2 Saund. Pl. 303. But, supposing it to be evidence, it proves the demand on the 64th day, the day after the last day of grace. He noted it for protest on the 21st, and protested it on the 23d, which was one day too late, as the note was due on the 19th and payable the 22nd. But how is the notice proved? Not by the protest. I admit that the note or memorandum of the notary may, after his death, be admitted to prove notice, if the note itself contains such proof, which this does not. *Page 13 
But as to the legal liability of the indorser: the contract of Mr. Cooper was, that if the note "was presented at the bank on the last clay of grace and not paid, and, if thereupon, reasonable notice was given to him, he would be liable.
The party here having neglected to set forth a demand at the bank, he could not give it in evidence if he had the proof ready. 14 East
500. And there is no proof of notice; the memorandum is nothing unless it set forth the time and manner of the notice. Nor is the want of funds of the drawer at the bank an answer, unless the presentment at the hank be alledged. This position does not controvert the case inWhen ton. Ch. on Bills, 282-7; 1 Sound. Pl. 358; 1GEast, 110-12; 5 Taunt. 30; 6 Com. L. R. 53, 72, 82, 95, 87, 96, 94. Opinions of Eldon, Redesdale, Burrow, Parke.Bailey and Wood. Wood was considered, in his day, as the first special pleader in England.
Layton for plff.
1st. As to the alteration in the amount of the note. It is not material; not in the body of the note; a memorandum under the names of the drawer and indorser, limiting the responsibility of each.
2nd. As to the demand. The demand was made on the proper person; and the fact that Horsey had no funds in bank excuses a demand there. An inspection of the bank-books is a sufficient demand. Ch. onBills, 333-4; 2 Burr. 669.
3rdly. As to notice. The notice must be given by a third person for the sake of the proof; the notary acts as the agent of the bank; he is a public officer acting under oath, and entitled to credit. He has here made a memorandum of his having given due notice. He states that on the 23d notice had been given, and it must have been by mail; this was his practice. Notice by the next mail is sufficient, and this note was payable on the 22nd. An inland bill of exchange is not to be protested until the day after the last day of grace. Chitty onBills, 365.
Wales for plff. This is a question of pleading; whether it is necessary to aver in a declaration, the presentment at the place where the note was made payable. If the deft. was willing to put his case on this issue he should have demurred; then, if the declaration were defective, the court would allow an amendment. By pleading, to the declaration and moving a nonsuit, the deft. cuts off this privilege. The court, therefore, will not allow this practice. But the presentment is substantially alledged as contended; the allegation is, that it was presented for payment according to the tenor and effect of the note. It has been decided by the House of Lords, that a particular averment of presentment at the place was unnecessary, it being sufficient to aver generally, that presentment was duly made according to the tenor of the note. That case was on a qualified acceptance. 6C. L. R. 53. Roe vs. Young. Best, Garrow, Richardson,Graham, as well as Mansfield, Ellenborough, Buller, Heath andRook, all concur in this opinion. This is the settled practice in the courts of this state, and. of the United. States.
2nd. As to the variance. What, is the contract. A note for $2,000. The memorandum to be done for $1,800, is no part of the contract *Page 14 
The drawer probably paid off $800 on the renewal of the note, which made it unnecessary to discount more than $1,800. This indorsement is simply a credit of $200 to a note of $3,000. As to the mode of presentment and of notice, these being matters properly for the court and jury, I do not think it necessary to answer them on this motion.
Rogers, for deft. in reply. Notice is a question of law, not for the jury, but for the court. So also is the demand; and we call on the court to decide, whether there has been a legal demand in this case or an equivalent to it. Where is the testimony? Is it the bank statement? This is not evidence; and no evidence can be admitted on this point, as the demand at the bank is not laid in the declaration. There is no pretence that such a demand was in fact made as a different one, a demand at the house of Horsey, is alledged. There is no evidence of notice to the indorser. The protest is no evidence in the case of an inland bill or promissory note. On a foreign bill it is the only evidence. A note may be recovered on as well without a protest as with it. If a protest be made, the notary must be produced to prove it as any other witness; the time, manner, c. His only business is in relation to the presentment and demand, and not to give notice. If he does this he must prove it. If the indorser reside in town, he must be notified personally; if out of town, by letter put in the post office in time to go by the next mail, and directed to the post-office nearest the indorser's residence. In the case ofSappington vs. Caldwell, in Newcastle county, the plff. was nonsuited because the notice was sent to Wilmington, when Newport was the nearest post-office. The manner of the notice must therefore be proved to enable the court to judge whether it is legal notice. The memorandum of the notary shows nothing; the protest alone, states that notice had been given.
2ndly. Is the presentment at the bank a condition precedent which plff. must aver in his narr? The case in 14 East, is directly on this point: and advantage may be taken of it by motion for a nonsuit as well as on demurrer. 14 East, 500; 5 Taunt. 6 T. R. 710;Dougl. 679.
3dly. The first count is on a note for $1,800. The deft. never indorsed such a note. The second count is on a note for $2,000, which the bank never discounted. As to the indorsement "to be done for $1,800," the question is not whether it injures the deft. but whether it varies his contract. Is it the contract he entered into? If it be not, he is discharged. Darley vs. English.
Mr. Wales referred to the case of the Bank of W. andBrandywine vs. Bradun, and produced the following note of that case, in the handwriting of C. Justice Johns.
"Bank of W. B.
 In the Supreme Court.
 
 vs. Tried at Nov. Term, 1826.
Thomas Bradun.

The register of Edward Roche, which contained a copy of the note on which this suit was founded., the deft. being an indorser, on which was the following entry: "10th of October, 1818. (Here was the *Page 15 
copy of the note) noted, protested and returned to bank," being offered in evidence, after proof of the handwriting and death of Edward Roche was objected to, and decided by the court to be admissible evidence.
The above appears from the notes of
 KENSEY JOHNS."
 The Court being about to deliver their opinion, the plff's. counsel moved for leave to amend the narr, which was refused, the court stating that they had never allowed an amendment in a material point after the jury were sworn.
now delivered the opinion of the court as follows:
"The engagement of the deft. in this case to the holder was, that he would `pay the amount of this note to him in case it was presented at the Bank of Wilmington and Brandy wine, when it became due for payment, and a failure to pay it there, with due notice of nonpayment. The proof of these facts constitutes the liability of the deft.
The declaration should have averred that the note was presented at the bank for payment; that it was not paid, and that the indorser had notice of such demand and non-payment. This is the form of declaring, as established by the books of precedents as far as we have looked into them.
The declaration alledges a personal demand on O. Horsey. We consider that it is in this respect substantially defective; that this defect appears on the face of the declaration itself, the note being set out in the declaration, the place where the demand ought to have been made appears on the pleadings, and we apprehend that this is such a substantial defect in pleading as that the deft. may avail himself of it on demurrer, or on motion in arrest of judgment. Instead of averring that a demand was made at the bank, the plff. alledges that it was made on 0. Horsey personally; and the question now is, whether under this allegation the plff. shall be permitted to prove a demand essentially different from his own allegation to support his action. The proofs and allegations ought to correspond.
The plff. insists that there were no funds at the bank at the time when this note became due; and, therefore, he was excused for not presenting it for payment. Whenever a party is bound to alledge any matter to be done by him to entitle him to an action, if he has any matter of excuse for not doing the act, he is bound to alledge this matter of excuse, or he will not be permitted to give it in evidence, if it is objected to at the time. Here, before the plff. could entitle himself to an action he should have presented the note at bank for payment; or, if he meant to excuse himself for not presenting it according to this legal obligation, he should set out the matter in his declaration, which he relies on as an excuse, that the court may judge of its sufficiency. When this note became due, had it been presented at the bank for payment, and there had been a failure to pay, and due notice had been given to Mr. Cooper, he would have been liable to the plff. But in an action founded on these facts, it is necessary to state the facts as they exist. So if 0. Horsey had no *Page 16 
funds in the bank at the time the note became due, as the bank was the holder of the note, it might not be necessary to make a formal presentment and demand, and the mere circumstances of its appearing from the books of the institution, that there were no funds there to meet the note, would in law excuse the formal presentment and demand; but when this matter is intended to be relied on as an excuse, such matter should appear on the face of the declaration, or the plff. is not at liberty to prove it. As the plff. has not averred, either a demand at the bank, or any matter in excuse for not making such demand, but has relied in his declaration on a personal demand on 0. Horsey, we consider that he is not at liberty, under this declaration, to prove any other species of demand or excuse than that which he has chosen to rely upon himself, and of course a nonsuit must be entered."
The Chief Justice also added: —
It is not necessary therefore, to give any opinion on the other points started by the deft. although there is one on which I have a strong opinion, and that is, that it appears from the proof, that demand was made either on the day before or on the dayafter the last day of grace. The note of the notary on the back of the note is "noted oh 21st." on the certificate, he says demand was made on the 23d. Now the last day of grace was the 22nd. We, however, give no opinion on this point.
I must be permitted to say a word as to the case of Nicholls vs.Webb, in 5th Wheaton, so far as it is considered an authority to establish the point that the entry on the record of a deceased notary's hook "that due notice was given to the indorser" is to be taken as proof that legal notice was given. The book I would hold as evidence of all the facts it gives as to the time, manner, c., of notice, by reason of his death. If we go further, we make the notary the judge of what is legal notice to fix the indorser. Now what is legal notice is a question of law for the court, and not for the notary. He should note the facts; when he gave notice; to whom; the mode, c. These are facts, and his record would be sufficient to prove them; but the conclusion of law, whether it is due notice or not, is for us to decide, and not him. If the case in Wheaton
goes as far as it appears it did go, it has not my approbation as sound law.
 The plff. was nonsuited.